1  Dan Stormer, Esq. [S.B. # 101967]
   Brian Olney, Esq. [S.B. #298089]
2  HADSELL STORMER RENICK & DAI LLP
   128 N. Fair Oaks Avenue
3  Pasadena, California 91103
   Telephone: (626) 585-9600
4  Facsimile:  (626) 577-7079
   Emails: dstormer@hadsellstormer.com
5           bolney@hadsellstormer.com

6  Attorneys for Plaintiffs
   SHEILANEE SEN and SHIBANI S. BALSAVER
7

8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

12  SHEILANEE SEN; SHIBANI S.          Case No.: 2:21-Cv-02326 SB (Kesx)
    BALSAVER,
13                                     **FIRST AMENDED COMPLAINT FOR**
                                       **DAMAGES:**
14                Plaintiffs,
                                       1.  42 U.S.C. § 1983, 4th and 14th
15        v.                           Amendments: Unreasonable Seizure

16  CITY OF LOS ANGELES; OFFICER       2.  42 U.S.C. § 1983, 4th and 14th
    JIANU; OFFICER JARVIS; SERGEANT    Amendments: Unreasonable Search
17  PELAYO; CHIEF MOORE; OFFICER
    CHRIS CHOI; OFFICER WILLIAM        3.  42 U.S.C. § 1983, 4th and 14th
18  COOPER; and DOES 1- 10.            Amendments: Excessive Force

19                Defendants.          4.  42 U.S.C. § 1983, 4th and 14th
                                       Amendments: Failure to Intervene
20
                                       5.  Bane Act, Cal. Civil Code § 52.1
21
                                       6.  Assault
22
                                       7.  Battery by Peace Officer
23
                                       8.  Intentional Infliction of Emotional
24                                     Distress

25                                     9.  Negligence

26                                     **[DEMAND FOR JURY TRIAL]**

27

28

---

FIRST AMENDED COMPLAINT

## I.   INTRODUCTION AND VENUE

1.     On February 8, 2020, Officers with the Los Angeles Police Department ("LAPD") pulled over Shibani Balsaver and Sheilanee Sen in the mistaken belief that the U-Haul Ms. Balsaver had rented to move into her new apartment might be stolen. The Officers conducted a "high risk" stop pursuant to LAPD's written policy requiring and/or permitting this highly dangerous and invasive procedure for suspected property crimes that are not high risk.  At least 10 officers surrounded Ms. Balsaver and Ms. Sen while an LAPD helicopter hovered overhead.  The Officers held Ms. Balsaver and Ms. Sen at gunpoint, ordered them to lie face-down and spread-eagled in the middle of the street, jammed their knees into the women's backs and into Ms. Balsaver's neck, and violently handcuffed them, all in full view of Ms. Balsaver's new neighbors.

2.     The Officers released Ms. Balsaver and Ms. Sen only after the Officers confirmed that the U-Haul was not stolen.  Sergeant Pelayo, the commanding LAPD officer at the scene, explained that the Officers' error was due to the LAPD's failure to train them on new computer codes distinguishing vehicles with out-of-state plates that are currently reported as stolen from those that were reported as stolen and thereafter reported as recovered.  No one at LAPD ever apologized to Ms. Balsaver or Ms. Sen.

## II.   JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  Plaintiffs' state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the United State District Court of the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located."  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or

1  omissions giving rise to the claim occurred[.]"

2  ### III.   PARTIES

3  5.      Plaintiff Shibani Balsaver resides in Los Angeles, California.  Ms.

4  Balsaver was driving a rented U-Haul truck and obeying all traffic laws when LAPD

5  officers pulled her over and conducted a "high risk" stop in which they drew their

6  weapons, ordered her to lie face down in the street with her arms and legs spread,

7  pointed their guns at her, and one officer jammed his knees into her back and neck

8  while he violently handcuffed her.

9  6.      Plaintiff Sheilanee Sen resides in Los Angeles, California.  Ms. Sen was a

10  passenger in Ms. Balsaver's U-Haul truck when LAPD officers pulled the truck over,

11  pointed their guns at Ms. Sen, ordered her to lie face down in the street with her arms

12  and legs spread, and one officer jammed his knee into her back while he violently

13  handcuffed her.

14  7.      Defendant City of Los Angeles ("the City") was and is a legal political

15  entity established under the laws of the State of California, with all the powers specified

16  and necessarily implied by the Constitution and laws of the State of California and

17  exercised by a duly elected City Council and/or their agents and officers.  The City is

18  responsible for the actions, inactions, policies, procedures, practices and customs of the

19  LAPD and its agents and employees. At all relevant times, the City was and continues

20  to be responsible for assuring that the actions of the LAPD and its agents and

21  employees comply with the Constitutions of the State of California and of the United

22  States and any other applicable laws and regulations.

23  8.      Defendant Michel Moore is the duly appointed Chief of Police for the

24  LAPD, and an employee of the City.  Defendant Moore holds the highest position in the

25  LAPD and is and was responsible for the hiring, screening, training, retention,

26  supervision, discipline, counseling, and control of all LAPD employees and/or agents.

27  At all relevant times herein, Defendant Moore was responsible for the promulgation of

28  the policies and procedures and allowances of the practices/customs pursuant to which

FIRST AMENDED COMPLAINT                    -2-

the acts of the Defendant Officers alleged herein were committed.  Defendant Moore is being sued in both his individual and official capacities for the purpose of ensuring Plaintiff may obtain complete and effective relief as against LAPD, whose actions and conduct are under the control of the current Chief of Police.

9.     Defendant Officer Jianu (#42586) is an employee of the LAPD who, among other things, pulled over Ms. Balsaver and Ms. Sen without probable cause, searched Ms. Balsaver's rented U-Haul truck without probable cause, and used excessive force against them without justification, including pointing his gun at Ms. Sen.

10.     Defendant Officer Jarvis (#42585) is an employee of the LAPD who, among other things, pulled over Ms. Balsaver and Ms. Sen without probable cause and used excessive force against them without justification, including pointing his gun at Plaintiffs.  While Ms. Balsaver lay face down in the street, Officer Jarvis jammed his left knee into Ms. Balsaver's back and pushed his right knee into the back of her head and neck, pressing her face into the pavement as he handcuffed her.  Officer Jarvis then pulled Ms. Balsaver up onto her feet and through the line of sight of at least one other Officer's gun.

11.     Defendant Sergeant Pelayo (#38760) is an employee of the LAPD who exercised managerial and supervisorial authority over the Officer Defendants and commanded their actions as the senior officer in command during the incident. Sergeant Pelayo told Plaintiffs that the Officers had pulled over the U-Haul believing it was stolen before realizing it has been recovered, and that the LAPD had not trained its Officers on the codes demonstrating that a formerly stolen vehicle had been recovered.

12.     Defendant Officer Doe 1 is an employee of the LAPD who was present for and participated in the incident.  Among other things, Doe 1 approached Plaintiffs while they lay face down in the street.  On information and belief, Doe 1 also searched Plaintiffs' rented U-Haul without probable cause or their consent.

13.     Defendant Officer Doe 2 is an employee of the LAPD who was present for

and participated in the incident.  Among other things, Doe 2 held Plaintiffs at gunpoint while they lay face down in the street and were handcuffed by Officer Jarvis and Doe 4.

14.     Defendant Officer Chris Choi, previously identified as Defendant Officer Doe 3, is an employee of the LAPD who was present for and participated in the incident.  Among other things, Officer Choi pointed his long gun at Ms. Sen and Ms. Balsaver, and continued holding Plaintiffs at gunpoint at very close range while they lay face down in the street and were violently handcuffed by Officer Jarvis and Doe 4.

15.     Defendant Officer William Cooper, previously identified as Defendant Doe 4, is an employee of the LAPD who was present for and participated in the incident.  Among other things, Officer Cooper drew his gun on Plaintiffs, then holstered his gun and violently handcuffed Ms. Sen, jamming his knee into her back and applying the hand cuffs so tightly that they left lasting marks.  Officer Cooper then pulled Ms. Sen up onto her feet and led her away with Doe 5.

16.     Defendant Officer Doe 5 is an employee of the LAPD who was present for and participated in the incident.  Among other things, Doe 5 stood guard with the other Officer Defendants while they held Plaintiffs at gunpoint and violently handcuffed Ms. Sen.  Doe 5 then led Ms. Sen away with Doe 4 and frisked Ms. Sen.

17.     Defendant Officer Doe 6 is an employee of the LAPD who was present for and participated in the incident.  Among other things, Doe 6 held Plaintiffs at gunpoint with his long gun while Plaintiffs lay face down in the street and were violently handcuffed by Officer Jarvis and Doe 4.

18.     Defendant Officer Doe 7 is an employee of the LAPD who was present for and participated in the incident.  Among other things, Doe 7 stood guard with the other Officer Defendants while they held Plaintiffs at gunpoint and violently handcuffed Plaintiffs.

19.     Defendant Officer Doe 8 is an employee of the LAPD who was present for and participated in the incident.  Doe 8 drew his gun and pointed it inside the passenger side door of the U-Haul after Plaintiffs had lay down in the street as they were ordered

1    to do.

2        20.    Defendant Officer Doe 9 is an employee of the LAPD who was present for

3    and participated in the incident.

4        21.    Defendant Officer Doe 10 is an employee of the LAPD who was present

5    for and participated in the incident.  Upon information and belief, Doe 8 piloted the

6    LAPD helicopter that hovered overhead to monitor Plaintiffs throughout the incident.

7        22.    Defendant Officers Jianu, Jarvis, Sergeant Pelayo, Officer Choi, Officer

8    Cooper, and Does 1-2 and 5-10 (collectively the "Officer Defendants") engaged in the

9    acts or omissions alleged herein under color of state law and within the course and

10   scope of their duties as Officers of the LAPD.  The Officer Defendants were acting with

11   the complete authority and ratification of their principal, Defendants City of Los

12   Angeles and Michel Moore.

13       23.    Plaintiffs are informed and believe and thereon allege that at all times

14   relevant herein, Defendants and each of them were the agents, employees, servants,

15   joint venturers, partners, and/or co-conspirators of the other Defendants named in this

16   Complaint and that at all times, each of the Defendants was acting within the course and

17   scope of said relationship with Defendants.

18       24.    All of the acts and omissions complained of herein by Plaintiffs against

19   Defendants were done and performed by said Defendants by and through their

20   authorized agents, servants and/or employees, all of whom at all relevant times herein

21   were acting within the course, purpose, and scope of said agency, service, and/or

22   employment capacity.  Plaintiff alleges that to the extent certain acts and omissions

23   were perpetrated by certain Defendants, the remaining Defendant or Defendants

24   confirmed and ratified said acts and omissions.

25       25.    Plaintiffs are informed and believe and thereupon allege, that at all times

26   material herein, each Defendant was dominated and controlled by his/her co-Defendant

27   and each was the alter-ego of the other.

28       26.    Whenever and wherever reference is made in this complaint to any act or

FIRST AMENDED COMPLAINT                    -5-

failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

### IV.    ADMINSITRATIVE PEREQUISITES

27.    Plaintiffs Sheilanee Sen and Shibani Balsaver exhausted their administrative remedies by filing governmental tort claims with the City of Los Angeles on June 15, 2020.  By correspondence dated September 24, 2020, the City of Los Angeles rejected Plaintiffs' governmental tort claims.

### V.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

28.    February 8, 2020 was moving day.  Ms. Balsaver rented a U-Haul truck to move from her old apartment just east of Hollywood into her new apartment less than one mile away in the City of Los Angeles.

29.    Ms. Balsaver finished packing her belongings and drove the U-Haul truck toward her new apartment.  Her friend Ms. Sen, who was helping Ms. Balsaver with the move, rode in the passenger seat.  Ms. Balsaver and Ms. Sen obeyed all laws, including all traffic rules of the road.

30.    Unbeknownst to Ms. Balsaver and Ms. Sen, the U-Haul in which they were driving had previously been reported as stolen.  The U-Haul was later recovered on or around January 23, 2020, which was reported to law enforcement.  After recovering the truck, U-Haul repeatedly rented it out prior to renting it to Ms. Balsaver on February 8.

31.    Shortly after leaving her old apartment, Ms. Balsaver noticed a police SUV behind her.  The police vehicle, driven by Defendants Jianu and Jarvis, followed Ms. Balsaver for several blocks.  The Officers never observed any traffic code violations or evasive driving.

32.    Ms. Balsaver turned onto her new street and parked the truck in front of her new apartment.

33.    Believing that the truck was currently reported as stolen, Defendants Jianu and Jarvis stopped their patrol car behind Ms. Balsaver's U-Haul and briefly flashed

1  their lights.

2      34.    Without any further reasonable suspicion aside from the possible stolen

3  truck, and without any probable cause to believe that Plaintiffs were involved in any

4  criminal activity, let alone criminal activity posing any high risk of danger, Defendant

5  LAPD Officers conducted a highly invasive and terrifying "high risk" traffic stop.

6      35.    Ninth Circuit law limits the use of "high risk" detentions only to "special

7  circumstances" "1) where the suspect is uncooperative or takes action at the scene that

8  raises a reasonable possibility of danger or flight; 2) where the police have information

9  that the suspect is currently armed; 3) where the stop closely follows a violent crime;

10  and 4) where the police have information that a crime that may involve violence is

11  about to occur." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1047 (9th

12  Cir. 2014).

13      36.    The LAPD's written policy governing the use of "high risk" stops violates

14  Ninth Circuit Law.  Specifically, the LAPD's written policy directs, or in the alternative

15  authorizes, the use of "high risk" stops whenever officers have a "reasonable belief that

16  occupant(s) in vehicle may . . . have committed a felony."  LAPD's written policy

17  lumps together all suspected felonies, even including suspected property crimes like

18  vehicle thefts that are not crimes of violence.  The LAPD's written policy does not limit

19  the use of "high risk" stops to the circumstances permitted by Ninth Circuit law, and

20  none of those circumstances were present here.

21      37.    LAPD's written policy directs, or in the alternative authorizes, officers

22  conducting such "high risk" stops to draw their weapons and point them towards the

23  suspect's vehicle and at the person's body, "prone" the person by ordering them to lie

24  on their stomach with their arms and legs spread out, and handcuff the person.  The

25  LAPD employed all of these tactics against Ms. Balsaver and Ms. Sen.

26      38.    While Ms. Balsaver and Ms. Sen remained in the U-Haul, approximately

27  half a dozen additional LAPD police vehicles pulled up behind the U-Haul.  At least

28  one police car parked in front of the U-Haul, boxing Plaintiffs in.  An LAPD helicopter

circled overhead.

39.     The Officer Defendants got out of their cars with their handguns and long guns drawn.  At least one officer—Defendant Jianu—pointed his gun at the truck, aiming at Ms. Sen in the passenger side of their vehicle.  Ms. Sen feared she might be shot.

40.     The officers ordered Ms. Balsaver to drop her keys out of the window, get out of the truck with her back facing the officers and her hands on her head, walk into the middle of the street, get on her knees, and lie down on her stomach with her legs spread apart.  Ms. Balsaver immediately complied with all of the Officer Defendants' commands, and lay face down with her head faced to the left and spread eagle in the middle of the street.

41.     The Officer Defendants' commands were confusing and difficult for Plaintiffs to hear over the noise of the helicopter.  Ms. Balsaver was terrified that she would not hear a command, fail to obey it, and be shot.

42.     The Officer Defendants then ordered Ms. Sen to get out of the U-Haul. Ms. Sen obeyed each of the Officers' commands.  She got out of the truck, put her hands behind her head, and saw Defendant Jianu still pointing his gun at her.  The Defendant Officers ordered Ms. Sen to walk backwards to the back of the U-Haul and open the trunk.  The Officers did not administer a *Miranda* warning, inform Plaintiffs of their right to refuse to consent to the search, or state that a search warrant could be obtained.  Ms. Sen obeyed the Officer's order and opened the trunk, providing the Officer Defendants a clear view of Ms. Balsaver's modest belongings inside.  Upon information and belief, the Officer Defendants searched Ms. Balsaver's belongings without Plaintiffs' consent.  The Officers Defendants ordered Ms. Sen to walk forward, get on her knees, and get on the ground.  Ms. Sen lay face down and spread eagle in the middle of the street as instructed, several feet to the right of Ms. Balsaver.

43.     At least six Officers—Defendant Officer Jarvis and Defendant Officers Does 1-5—advanced on Plaintiffs, at least four of them with their guns drawn.

Defendant Officer Doe 1 walked to the driver-side door of the U-Haul and, upon information and belief, searched the inside of the truck without Plaintiffs' consent. Defendant Officers Choi, Cooper, and Does 2 and 5 continued their advance towards Plaintiffs. Defendant Officer Jarvis, Officer Choi, Officer Cooper, and Doe 2 each had their guns drawn. Defendant Officer Choi aimed his long gun at Ms. Sen as he approached Plaintiffs and then trained his gun on Ms. Balsaver while he stood just a few feet behind her. Defendant Officer Jarvis, Doe 2, and Officer Choi formed a line several feet behind Plaintiffs with their guns pointed at Ms. Balsaver and Ms. Sen while Plaintiffs lay motionless on the pavement with their arms and legs apart as they had been ordered to do. Defendant Officer Doe 5 stood guard several feet behind Defendant Officers Jarvis, Choi, and Doe 2.

44.     Defendant Officer Cooper continued walking toward Ms. Sen and holstered his gun. He knelt down and jammed his knee into Ms. Sen's back while he handcuffed her, tightening the handcuffs so tightly that they dug deeply into Ms. Sen's wrists and left lasting marks.

45.     While Defendant Officer Cooper was handcuffing Ms. Sen, Defendant Officer Doe 6, who was armed with a long gun, and Defendant Officer Doe 7 approached Plaintiffs, who were now surrounded by at least seven Officers. An eighth Officer, Defendant Sergeant Pelayo, walked toward Plaintiffs and stood several feet behind the other seven Officers. Defendant Officer Cooper pulled Ms. Sen to her feet and led her away to a police car, accompanied by Defendant Officer Doe 5. Doe 5 frisked Ms. Sen. The Officers then put Ms. Sen into the back of a police car, strapped the seatbelt around her, closed the car door, and left her there with her hands shackled behind her back.

46.     At least six Officer Defendants (Jarvis, Pelayo, Choi, and Does 2, 6, and 7) surrounded Ms. Balsaver, at least four of whom (Jarvis, Choi, and Does 2, and 6) had their weapons drawn. Defendant Officer Choi continued pointing his long gun at Ms. Balsaver. Defendant Officer Jarvis holstered his gun and knelt beside Ms. Balsaver,

jamming his left knee into Ms. Balsaver's back and his right knee into the back of her head and neck, pressing her face into the pavement.  Officer Jarvis handcuffed Ms. Balsaver and pulled her up onto her feet and through the line of sight of Defendant Officer Choi's gun.

47.     Defendant Officer Jarvis walked Ms. Balsaver to the police cars and pushed her against a police SUV.  Defendant Officer Doe 5 asked Ms. Balsaver if she was armed and patted her down.  Officer Doe 5 told Ms. Balsaver that the U-Haul had been reported as stolen.  Ms. Balsaver told Doe 5 that she had rented the U-Haul from a local U-Haul dealership and that the rental receipt was in her purse, which was still in the U-Haul.  Doe 5 yelled to Defendant Officer Jarvis that the rental receipt was in the purse in the car.  Officer Jarvis searched the U-Haul.

48.     After much time passed, Defendant Officer Jarvis told Ms. Sen, who was still handcuffed and strapped into one of the police cars, that the U-Haul truck had come up as stolen in their system.  Ms. Sen explained that Ms. Balsaver had rented the U-Haul just a few hours earlier.  Defendant Officer Jarvis took Ms. Sen out of the police car and led her to the sidewalk where Ms. Balsaver was standing, still handcuffed.  Ms. Balsaver could see that Ms. Sen had been crying.

49.     The Officer Defendants finally removed the handcuffs from Plaintiffs' wrists.  Defendant Sergeant Pelayo told Ms. Balsaver and Ms. Sen that the Officers had pulled them over in the mistaken belief that the U-Haul was stolen.  Defendant Sergeant Pelayo explained that the Officers had made some calls and learned that the U-Haul had in fact been reported as recovered several weeks earlier.  In fact, the U-Haul had been recovered around January 23, 2020, and repeatedly rented out since that time.

50.     Defendant told Ms. Balsaver and Ms. Sen that LAPD had made changes to its computer system around October 2019 but had not trained its Officers on the new system.  Defendant Sergeant Pelayo showed Plaintiffs a photograph on her phone of the computer screen in one of the police cars displaying some information about the U-Haul.

51.     With the Officers' permission, Ms. Balsaver and Ms. Sen unloaded Ms. Balsaver's belonging from the U-Haul and carried them into her new apartment.  When they were finished, Defendant Sergeant Pelayo and two other officers followed Plaintiffs to the U-Haul dealership where Ms. Balsaver had rented the truck.  Defendant Officers Jianu and Jarvis drove to the U-Haul dealership in their own police car.  The U-Haul employees confirmed that the U-Haul was previously reported as stolen but had been reported as recovered before the truck was rented to Ms. Balsaver.  Defendant Sergeant Pelayo reiterated her explanation that the Officer Defendants had not been trained on the computer system that LAPD had implemented months earlier.  She stated that a "CV" code—short for "Clear Vehicle"—indicating that the truck has been reported as recovered and no longer stolen had been displayed on the Officer Defendants' computer but that the Officers had not been trained to understand what this code meant.  Defendant Sergeant Pelayo told Plaintiffs that emails and other communications would be sent throughout the LAPD notifying Departmental personnel that use of a CV code means that a vehicle is not currently stolen.

52.     Defendant Sergeant Pelayo gave her email address to Ms. Balsaver and Ms. Sen.  Several days later, Ms. Balsaver and Ms. Sent contacted Defendant Sergeant Pelayo and scheduled a meeting for later that week, on or around February 14, 2020, in an attempt to learn more about the reasons why they had been pulled over, held at gunpoint, and detained while driving a truck that the LAPD's own computer system showed was not stolen.  During this meeting, Defendant Sergeant Pelayo reiterated that the LAPD had not trained its Officers on the new system or the meaning of the "CV" code indicating that the U-Haul was not currently stolen, and stated that all of the Officers' conduct during the incident was pursuant to LAPD's standard policy and procedure.

53.     Plaintiffs bring this action for damages against Defendants for general, compensatory, and statutory damages, costs and attorneys' fees based on Defendants' unlawful and egregious conduct, as alleged herein.  Plaintiffs also seek declaratory and

injunctive relief enjoining the LAPD's policy requiring, or in the alternative

authorizing, "high risk" stops inconsistent with Ninth Circuit law.  Additionally,

Plaintiffs seek punitive damages against the individual Defendants.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Unreasonable Seizure**

**(By All Plaintiffs Against All Defendants)**

54.    Plaintiffs allege and incorporate by reference each and every allegation

contained in the foregoing paragraphs as though fully set forth herein.

55.    All of the acts of Defendants Jianu, Jarvis, Pelayo, Choi, Cooper, and Does

1-2 and 5-10 were done under color of state law.

56.    The acts of the Officer Defendants deprived Plaintiffs of rights, privileges,

and immunities secured by the Constitution of the United States, including but not

limited to their rights under the Fourth Amendment of the United States Constitution,

incorporated and made applicable to the states and their local governments by the

Fourteenth Amendment by, among other things, unlawfully seizing Plaintiffs by

conducting a high risk traffic stop and a *de facto* arrest of Plaintiffs without any lawful

basis, probable cause, warrant, or any exception thereto.

57.    Each of the Officer Defendants was both personally involved and an

integral participant in the violation of Plaintiffs' constitutional rights.  Each Officer was

aware of the unlawful actions of the other Officers as they planned to and did conduct a

"high risk" stop of Plaintiffs' U-Haul based only on suspicion of a stolen vehicle and

even though it was not currently reported as stolen, and performed a *de facto* arrest of

Plaintiffs as they held Plaintiffs at gunpoint with several guns pointed directly at

Plaintiffs, forced Plaintiffs to lie prone and spread eagle in the street, handcuffed

Plaintiffs, placed Ms. Sen in the back of a police car, took Plaintiffs into custody for a

considerable period of time, and searched Plaintiffs' U-Haul.  None of the involved

Officers objected to these violations of Plaintiffs' rights, and each Officer participated

in the violation by performing police functions, including meaningful participation in the unlawful seizure and *de facto* arrest of Plaintiffs and the use of unreasonable force against them.

58.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Plaintiffs sustained and incurred damages including pain, suffering, and emotional injury.

59.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

60.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars, officers, and a helicopter, drawing their weapons and pointing firearms at people, proning people out, jamming their knees in into people's backs and necks, handcuffing them, and detaining them at length, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

61.     The training policies of the City of Los Angeles were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to (1) Correctly interpreting LAPD files and data, including but not limited to CV codes and other information reported on mobile computers in LAPD police cars, demonstrating that a vehicle formerly reported as stolen had thereafter been reported as recovered and/or not currently stolen, and (2) performing high risk traffic stops of vehicles suspected of being stolen.  The City of Los

Angeles knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Ms. Balsaver and Ms. Sen of their rights.  The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Officers adequately.

62.    Defendant City of Los Angeles' official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Ms. Balsaver and Ms. Sen by Officer Jianu, Officer Jarvis, Sergeant Pelayo, Officer Choi, Officer Cooper, and Does 1-2 and 5-10, and the other involved Officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused their injuries.  These policies, longstanding practices, and/or customs include performing high risk traffic stops of vehicles suspected of being stolen.

63.    LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  Upon information and belief, the City took no action in response to Plaintiffs' allegations and none of the involved Officers have been disciplined.

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Unreasonable Search**

**(By Ms. Balsaver Against All Defendants)**

64.    Ms. Balsaver realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65.    All of the acts of Defendants Jianu, Jarvis, Pelayo, Choi, Cooper, and Does 1-2 and 5-10 were done under color of state law.

66.     The acts of the Officer Defendants deprived Ms. Balsaver of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to her rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, by, among other things, searching the U-Haul truck she had rented without a warrant, exigency, emergency, probable cause, or Plaintiffs' consent.

67.     Each of the Officer Defendants was both personally involved and an integral participant in the violation of Ms. Balsaver's constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to search and did search the U-Haul truck including its trunk; did not object to this violation of Ms. Balsaver's rights; and participated in the violation by performing police functions, including meaningful participation in the unlawful traffic stop, *de facto* arrest, search, and use of unreasonable force against Plaintiffs.

68.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Ms. Balsaver sustained and incurred damages including emotional injury.

69.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Ms. Balsaver.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

70.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars, officers, and a helicopter, drawing their weapons and pointing firearms at people, proning people out, jamming their knees in

FIRST AMENDED COMPLAINT                    -15-

into people's backs and necks, handcuffing them, detaining them at length, and searching their vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

71.     The training policies of the City of Los Angeles were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to (1) Correctly interpreting LAPD files and data, including but not limited to CV codes and other information reported on mobile computers in LAPD police cars, demonstrating that a vehicle formerly reported as stolen has thereafter been reported as recovered and/or not currently stolen, and (2) performing high risk traffic stops of vehicles suspected of being stolen and searching the vehicle.  The City of Los Angeles knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Ms. Balsaver of her rights.  The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Officers adequately.

72.     Defendant City of Los Angeles' official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Ms. Balsaver by the Officer Defendants and the other involved Officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Ms. Balsaver's rights as to be the moving force that caused her injuries.

73.     LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Officer Defendants and the other involved Officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  Upon information and belief, the City took no action in response to Plaintiffs' allegations and none of the involved Officers have been disciplined.

FIRST AMENDED COMPLAINT                    -16-

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Excessive Force**

**(By All Plaintiffs Against All Defendants)**

74.     Plaintiffs allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

75.     All of the acts of Defendants Jianu, Jarvis, Pelayo, Choi, Cooper, and Does 1-2 and 5-10 were done under color of state law.

76.     The acts of the Officer Defendants deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to their rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, using excessive force against Plaintiffs. Specifically, Defendants pointed their guns at Plaintiffs, which under established Ninth Circuit law is a use of force.  Defendants also forced Plaintiffs to lie proned out in the middle of the street, forcefully jammed their knees into Plaintiffs' backs and into Ms. Balsaver's head and neck, and applied handcuffs so tightly that they left lasting marks.

77.     Each of the Officer Defendants was both personally involved and an integral participant in the violation of Plaintiffs' constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to and did point their long guns and handguns at Plaintiffs, proned them, jammed their knees into Plaintiffs backs and Ms. Balsaver's neck, and violently handcuffed Plaintiffs.  None of the Officers objected to these violations of Plaintiffs' rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the unlawful traffic stop, *de facto* arrest, and use of unreasonable force against Plaintiffs.

78.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Plaintiffs sustained and incurred damages including pain, suffering, and

FIRST AMENDED COMPLAINT                     -17-

emotional injury.

79.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

80.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops involving excessive force, including but not limited to utilizing large numbers of police cars, officers, and a helicopter, drawing their weapons and pointing firearms at people, proning people out, jamming their knees in into people's backs and necks, handcuffing them, and detaining them at length, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

81.     The training policies of the City of Los Angeles were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to (1) Correctly interpreting LAPD files and data, including but not limited to CV codes and other information reported on mobile computers in LAPD police cars, demonstrating that a vehicle formerly reported as stolen but thereafter reported as recovered and/or not currently reported as stolen, and (2) performing high risk traffic stops of vehicles suspected of being stolen and using excessive force.  The City of Los Angeles knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Ms. Balsaver and Ms. Sen of their rights. The City of Los Angeles was thus deliberately indifferent to the obvious consequences

of its failure to train its Officers adequately.

82.    Defendant City of Los Angeles' official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Ms. Balsaver and Ms. Sen by Officer Jianu, Officer Jarvis, Sergeant Pelayo, Officer Choi, Officer Cooper, and Does 1-2 and 5-10, and the other involved Officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused their injuries.

83.    LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  Upon information and belief, the City took no action in response to Plaintiffs' allegations and none of the involved Officers have been disciplined.

**FOURTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Failure to Intervene**

**(By All Plaintiffs Against All Defendants)**

84.    Plaintiffs allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

85.    All of the acts of Defendants Jianu, Jarvis, Pelayo, Choi, Cooper, and Does 1-2 and 5-10 were done under color of state law.

86.    The acts of the Officer Defendants deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to their rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, failing to intervene in the unlawful actions of other Officers.  These unlawful actions include the unreasonable traffic stop

of Plaintiffs, the unlawful *de facto* arrest of Plaintiffs, the unlawful search of the U-Haul truck, and the use of excessive force against Plaintiffs, including Defendants pointing their guns at Plaintiffs, forcing Plaintiffs to lie "proned out" in the middle of the street, forcefully jammed their knees into Plaintiffs' backs and into Ms. Balsaver's head and neck, and applying handcuffs so tightly that they left lasting marks.

87.     At all relevant times, the Officer Defendants were present and had a realistic opportunity to intervene and prevent the unlawful traffic stop, *de facto* arrest, search, and excessive force by their fellow Officers against Plaintiffs, but neglected to do so.

88.     As a direct and proximate result of the aforementioned acts and omissions of the Officer Defendants, Plaintiffs sustained and incurred damages including pain, suffering, and emotional injury.

89.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

90.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars, officers, and a helicopter, drawing their weapons and pointing firearms at people, proning people out, jamming their knees in into people's backs and necks, handcuffing them, detaining them at length, and searching their vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.  These official policies and longstanding practices and/or

1    customs also include failure to intervene in said activities.

2        91.    The training policies of the City of Los Angeles were not adequate to train,

3    supervise, and control its Officers to handle the usual and recurring situations with

4    which they must deal, including but not limited to failing to intervene to stop unlawful

5    seizures, unlawful searches, and the use of excessive force, including carrying out "high

6    risk" stops utilizing large numbers of police cars, officers, and a helicopter, pointing

7    firearms at people, proning people out, applying handcuffs in a violent and painful

8    manner, detaining them at length, and searching their vehicles, all in situations that are

9    not high risk and based only upon reasonable suspicion of property crimes such as

10   suspected stolen vehicles and without regard to the Ninth Circuit law.  The City of Los

11   Angeles knew that its failure to adequately train its Officers for such situations made it

12   highly predictable that its Officers would fail to intervene to stop constitutional

13   violations by their fellow Officers that deprive persons such as Ms. Balsaver and Ms.

14   Sen of their rights.  The City of Los Angeles was thus deliberately indifferent to the

15   obvious consequences of its failure to train its Officers adequately.

16       92.    Defendant City of Los Angeles' official policies and/or longstanding

17   practices or customs, including but not limited to its training policies, caused the

18   deprivation of the constitutional rights of Ms. Balsaver and Ms. Sen by Officer Jianu,

19   Officer Jarvis, Sergeant Pelayo, Officer Choi, Officer Cooper, and Does 1-2 and 5-10,

20   and the other involved Officers; that is, the City of Los Angeles's official policies

21   and/or longstanding practices or customs are so closely related to the deprivation of

22   Plaintiffs' rights as to be the moving force that caused their injuries.

23       93.    LAPD Chief Michel Moore, a final policymaker for the City of Los

24   Angeles, ratified the actions and omissions of the Defendant Officers and the other

25   involved officers in that he had knowledge of and made a deliberate choice to approve

26   their unlawful acts and omissions, including their failure to intervene to stop the

27   unlawful acts of their fellow officers.  Upon information and belief, the City took no

28   action in response to Plaintiffs' allegations and none of the involved Officers have been

FIRST AMENDED COMPLAINT                    -21-

disciplined.

## FIFTH CLAIM FOR RELIEF
## BANE ACT, CIVIL CODE § 52.1
### (By All Plaintiffs Against All Defendants

94.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

95.     Article I, § 13 of the California Constitution and the Fourth Amendment to the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, guarantee the right of persons to be free from unlawful false arrests, unlawful searches, and excessive force on the part of law enforcement officers.  The Officer Defendants and the other involved Officers, by engaging in the wrongful acts and failures to act alleged herein, intentionally and deliberately denied each of these rights to Plaintiffs by threats, intimidation, or coercion, to prevent Plaintiffs from exercising their rights to be free of false arrest, unlawful searches, and excessive force, thus giving Plaintiffs claims for damages pursuant to California Civil Code § 52.1.  Specifically, the Officer Defendants and other involved Officers unlawfully (1) stopped Plaintiffs, (2) performed a *de facto* arrest of Plaintiffs, (3) searched the U-Haul truck, and (4) used excessive force against Plaintiffs, including pointing their guns at Plaintiffs, forcing Plaintiffs to lie proned out in the middle of the street, forcefully jamming their knees into Plaintiffs' backs and into Ms. Balsaver's head and neck, and applying handcuffs so tightly that they left lasting marks. The Officer Defendants intended by their actions to deprive Plaintiffs of their enjoyment of the interests protected by the right to be free of such conduct.

96.     As a direct and proximate result of the aforementioned acts and omissions of the Officer Defendants, Plaintiffs sustained and incurred damages including pain, suffering, and emotional injury.

97.     Each of the Officer Defendants was both personally involved and aided and abetted in the violation of Plaintiffs' constitutional rights.  Each Officer knew that

the other Officers were committing unlawful actions against Plaintiffs as they planned to and did unlawfully arrest Plaintiffs, search the U-Haul, and use excessive force against Plaintiffs.  Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiffs.

98.    The City of Los Angeles is vicariously liable for its Officers' misconduct.

99.    In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiffs' rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

100.   As the direct and legal result of Defendants' conduct, Plaintiffs suffered and will continue to suffer damages, including but not limited to those set forth above, and are entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiffs' actual damages but no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as compensatory and punitive damages and attorneys' fees.

## SIXTH CLAIM FOR RELIEF

## ASSAULT

### (By All Plaintiffs Against All Defendants)

101.   Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

102.   On information and belief, Officer Jarvis, Officer Jianu, Officer Choi, Officer Cooper, and Does 2 and 6 drew their weapons and aimed them at Plaintiffs' persons in a threatening manner.

103.   Plaintiffs reasonably believed that Defendants would shoot them.

104.   Plaintiffs did not consent to Defendants' conduct.

105.   As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiffs have suffered and continue to suffer emotional injury.

106.   Each of the Officer Defendants was both personally involved and aided and abetted in the violation of Plaintiffs' constitutional rights.  Each Officer knew that the other Officers were committing unlawful actions against Plaintiffs as they planned to and did unlawfully aim their weapons at Plaintiffs.  Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiffs.

107.   The City of Los Angeles is vicariously liable for the actions of the Officer Defendants.

108.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiffs' rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## SEVENTH CLAIM FOR RELIEF
## BATTERY BY PEACE OFFICER
### (By All Plaintiffs Against All Officer Defendants)

109.   Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

110.   Defendants Jarvis and Defendant Officer Cooper intentionally touched Ms. Balsaver and Sen, respectively, while jamming their knees into Plaintiffs' backs and/or necks and handcuffing them.

111.   Defendants Jarvis and Cooper each used unreasonable force while jamming their knees into Plaintiffs' backs and/or necks and handcuffing Plaintiffs.

112.   Neither Plaintiff consented to the Officers' uses of force.

113.   Plaintiffs each were harmed by the Officers' uses of force, which has

caused them to suffer injuries including pain, suffering, and emotional injuries.

114.   Defendants Jarvis and Cooper's uses of unreasonable force pain, suffering, and emotional injury were each a substantial factor in causing Plaintiffs' harm.

115.   Each of the Officer Defendants was both personally involved and aided and abetted in the violation of Plaintiffs' constitutional rights.  Each Officer knew that the other Officers were committing unlawful actions against Plaintiffs as they planned to and did use excessive force against Plaintiffs.  Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiffs.

116.   As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs sustained pain, suffering, and emotional injury.

117.   The City of Los Angeles is vicariously liable for the actions of the Officer Defendants.

118.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiffs' rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## EIGHTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (By All Plaintiffs Against All Defendants)

119.   Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

120.   Defendants' actions performing a "high risk" stop of Plaintiffs, drawing their guns, pointing their weapons at Plaintiffs, proning Plaintiffs on the street, jamming their knees into Plaintiffs' backs and into Ms. Balsaver's neck, violently handcuffing Plaintiffs, detaining Plaintiffs, and searching the U-Haul, all in full view of Ms.

Balsaver's new neighbors, was outrageous.  This conduct was performed with reckless disregard to the effect that these actions and omissions would have upon Plaintiffs, including emotional distress.

121.   As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiffs suffered injuries including pain, suffering, and emotional injury.

122.   The City of Los Angeles is vicariously liable for the actions of the Officer Defendants.

123.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiffs' rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**NINTH CLAIM FOR RELIEF**

**NEGLIGENCE**

**(By All Plaintiffs Against All Defendants)**

124.   Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

125.   The conduct of the Officer Defendants as set forth herein, was tortious in that Defendants breached their duty of care to Plaintiffs, two small unarmed young women besieged by at least ten police officers, when the Officer Defendants performed a "high risk" stop, searched the U-Haul truck, and used excessive force against Plaintiffs, including pointing guns at them and violently handcuffing them.

126.   Defendants City, Moore, and Pelayo failed to appropriately hire, supervise, train, review, and ensure that their Officers abided by the standard of care, failed to enact appropriate standards and procedures that would have prevented such harms to Plaintiffs, including failing to train LAPD Officers (1) not to use high risk traffic stops based only on suspicion of a stolen vehicle, (2) to correctly interpret LAPD files and

data, including but not limited to CV codes and other information reported on mobile computers in LAPD police cars, demonstrating that a vehicle formerly reported as stolen had thereafter been reported as recovered and/or not currently stolen, and (3) not to use excessive force or perform *de facto arrests* or vehicular searches in situations where such actions are not justified.

127.   Each of the Officer Defendants was both personally involved and aided and abetted in the violation of Plaintiffs' constitutional rights.  Each Officer knew that the other Officers were committing unlawful actions against Plaintiffs as they planned to and did unlawfully arrest Plaintiffs, search the U-Haul, and use excessive force against Plaintiffs.  Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiffs.

128.   As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiffs sustained and incurred physical and emotional damages.

129.   The City of Los Angeles is vicariously liable for the actions of the Officer Defendants.

130.   In doing the foregoing wrongful acts, the Officer Defendants, and each of them, acted with conscious disregard of Plaintiffs' rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, amounts to be proven at trial;

2.    For punitive and exemplary damages against individually named Defendants Moore, Defendant Jianu, Defendant Jarvis, Defendant Pelayo, Defendant

Choi, Defendant Cooper, and Defendant Does 1-2 and 5-10 in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

    3.    Prejudgment and post-judgment interest;

    4.    For costs and suits and reasonable attorneys' fees and costs as authorized by statute or law;

    5.    For restitution as the Court deems just and proper;

    6.    For injunctive and declaratory relief; and

    7.    For such other relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action.


Dated: August 27, 2021               Respectfully Submitted,

                                     HADSELL STORMER RENICK & DAI LLP




                                     By:  __/s/ Brian Olney_____
                                          Dan Stormer
                                          Brian Olney
                                     Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT              -28-